UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

MARTHA L.,[1]

        Plaintiff,

   v.

COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION,

        Defendant.

Case. No. 3:19-cv-00701-YY

OPINION AND ORDER

YOU, Magistrate Judge:

    Plaintiff Martha L. seeks judicial review of the final decision by the Social Security Commissioner ("Commissioner") denying her application for Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381-1383f. This court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. §§ 405(g) and 1383(g)(3). For the reasons set forth below, that decision is AFFIRMED.

**PROCEDURAL HISTORY**

    Plaintiff protectively filed for SSI on May 7, 2014, alleging disability beginning on September 4, 2011. Tr. 172-81. Her application was initially denied on September 14, 2016, and upon reconsideration on November 2, 2016. Tr. 111-15, 116-18. On December

---

[1] In the interest of privacy, the court uses only plaintiff's first name and the first initial of her last name.

1 – OPINION AND ORDER

15, 2016, plaintiff filed a written request for a hearing before an Administrative Law Judge ("ALJ"), which took place on March 8, 2018. Tr. 33-73. During the hearing, plaintiff amended the onset date to July 31, 2015, the date when plaintiff turned 50. Tr. 41. After receiving testimony from plaintiff and a vocational expert, ALJ Richard Geib issued a decision on May 16, 2018, finding plaintiff not disabled within the meaning of the Act. Tr. 15-28. The Appeals Council denied a request for review on February 28, 2019. Tr. 1-3. Therefore, the ALJ's decision is the Commissioner's final decision and subject to review by this court. 20 C.F.R. § 416.1481.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). This court must weigh the evidence that supports and detracts from the ALJ's conclusion and "'may not affirm simply by isolating a specific quantum of supporting evidence.'" *Garrison v. Colvin*, 759 F.3d 995, 1009-10 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). This court may not substitute its judgment for that of the Commissioner when the evidence can reasonably support either affirming or reversing the decision. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Instead, where the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld if it is "supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted); *see also Lingenfelter*, 504 F.3d at 1035.

## SEQUENTIAL ANALYSIS AND ALJ FINDINGS

Disability is the "inability to engage in any substantial gainful activity by reason of

any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act.  20 C.F.R. § 416.920; *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999)).

At step one, the ALJ found plaintiff did not engage in substantial gainful activity since May 7, 2014, her application date.  Tr. 17.  At step two, the ALJ determined plaintiff suffered from the following severe impairments: an affective disorder, an anxiety disorder, obesity, and a left shoulder condition.  *Id.*  The ALJ recognized other impairments in the record, including spine pain, which he concluded were non-severe.  Tr. 17-18.

The ALJ found plaintiff's mental impairments, considered singly or in combination, did not meet or medically equal the criteria of listings 12.04 or 12.06.  Tr. 19.  In making that finding, the ALJ considered the four broad areas of mental functioning, known as the "paragraph B" criteria, used to evaluate mental disorders, and the "paragraph C" criteria, used to evaluate serious and persistent mental disorders.  *Id.*; 20 C.F.R. Part 404, Subpt. P, App. 1, 12.00.

At step three, the ALJ found plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment.  Tr. 18.  The ALJ next assessed plaintiff's residual functional capacity ("RFC") and determined she could perform medium work as defined in 20 C.F.R. § 416.967(c), except that plaintiff can frequently reach overhead with the left upper extremity, can have no contact with the general public, and can

3 – OPINION AND ORDER

perform simple routine tasks in a low stress work environment defined as involving only occasional changes in work routine and work setting. Tr. 20-26.

At step four, the ALJ found plaintiff was unable to perform any past relevant work. Tr. 26.

At step five, the ALJ found that considering plaintiff's age, education, work experience, and RFC, she could perform jobs that existed in significant numbers in the national economy including kitchen helper, hand packager, and recycler/reclaimer. Tr. 27-28. Thus, the ALJ concluded plaintiff was not disabled at any time from the application filing date, May 7, 2014. Tr. 28.

## DISCUSSION

Plaintiff argues that the ALJ: (1) improperly discounted her subjective symptom testimony; (2) erroneously assessed the medical opinion evidence of treating qualified mental health professional ("QMHP") Nicole Prophet and treating physician Dr. Patricia Gardner; and (3) failed to support the RFC determinations with substantial evidence.

**I.    Subjective Symptom Testimony**

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must

be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

Effective March 28, 2016, the Commissioner superseded Social Security Ruling ("SSR") 96-7p, governing the assessment of a claimant's "credibility," and replaced it with SSR 16-3p. *See* SSR 16-3p, *available at* 2016 WL 1119029. SSR 16-3p eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. *Id.* at *1-2. The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.

Here, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical record and other evidence in the record. Tr. 20. Plaintiff makes two arguments regarding how the ALJ erred, which the court examines in turn.

5 – OPINION AND ORDER

### A. Work History

The ALJ discredited plaintiff's testimony because she stopped working for reasons other than her disability:

> [T]he claimant's work history undermines her assertion of total disability. The claimant's prior work was at Fred Meyer. She stated that after having a premature son, she was no longer able to work there. This was 17 years previously (Ex. C8F/3). The claimant appears to have left her last job for reasons unrelated to her impairments, suggesting that it was family matters rather than the claimant's medical problems that have prohibited her from working.

Tr. 24. Petitioner contends that "[b]ecause of the remote date of her past work history, this alone should not be viewed as a clear and convincing reason to reject [her] symptom testimony." Pl.'s Br. 16.

In *Bruton v. Massanari*, the Ninth Circuit found the ALJ had a "sufficient" reason for rejecting a claimant's testimony where the claimant "stated at the administrative hearing and to at least one of his doctors that he left his job because he was laid off, rather than because he was injured." 268 F.3d 824, 828 (9th Cir. 2001). The claimant, who was injured at work, applied for disability insurance benefits on June 10, 1993, alleging an onset date that was the same as the date he was laid off, April 6, 1993. *Id.* He also did not seek treatment for his work-related injury until September 1993. *Id.*

Here, by contrast, plaintiff left her last job over a decade before her alleged disability onset date. Thus, unlike *Bruton*, "the record in [plaintiff's] case does not support the inference that she sought disability benefits" for reasons other than her impairments. *McGowan v. Astrue*, No. C12-281-TSZ-BAT, 2012 WL 5390337, at *5 (W.D. Wash. Oct. 17, 2012) (holding the reasons the plaintiff left her job were not a proper basis to discount her credibility because the plaintiff had stopped working "long before"—one year prior—to

her alleged onset date and for reasons unrelated to her alleged impairments.); *see also Renee E. v. Saul*, No. 8:19-CV-00362-JC, 2019 WL 6918081, at *5 (C.D. Cal. Dec. 18, 2019) ("Because plaintiff's alleged onset date is two years after the date plaintiff was laid off, the Court finds that this is not a clear and convincing reason for rejecting plaintiff's subjective complaints."). Thus, the ALJ's reason for discounting plaintiff's testimony on this basis is not clear and convincing.

### B.     Activities of Daily Living

Plaintiff also takes issue with the fact that the ALJ discredited her subjective symptom testimony based on her ability to participate in activities of daily living. Pl. Br. 16-17. An ALJ may invoke activities of daily living in the context of discrediting subjective symptom testimony to (1) illustrate a contradiction in previous testimony or (2) demonstrate that the activities meet the threshold for transferable work skills. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Here, the ALJ found the former, i.e., "the claimant described daily activities of living which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." Tr. 25.

Plaintiff testified that she is unable to work full-time because "I don't know how I would do working . . . with people at this time, because I get in the mood where sometime[s] I can go somewhere and I can just freak out and I'll just be ready to leave." Tr. 51. The ALJ noted, however, that "[d]espite her difficulties being in crowds, the claimant reported driving her children to school, attending weekly group therapy, managing two households and attending her daughter's volleyball games and her son's basketball games." Tr. 24-25. The ALJ also observed that plaintiff was "living in a household with seven other

individuals and often caring for her grandchildren while her daughters were away at work." Tr. 25.

Indeed, plaintiff testified that she lives with four of her children, ages 10, 14, 17, and 19; has three other children, ages 18, 23, and 26; worked watching one of her grandchildren in 2009 and 2010[2]; currently babysits a different grandchild for eight or nine hours a day three days a week; drives 24 miles every day in order to take her children to school; takes care of two households—her own and her mother's; and attends her 17-year old daughter's volleyball games and her 10-year-old son's basketball games. Tr. 44, 45, 47, 49, 50, 55, 64, 65. The ALJ concluded that these activities "suggest a level of functioning greater than alleged in her application and testimony," and "[s]uch robust activities of daily living contradict the claimant's statement that she is unable to maintain full-time competitive employment." Tr. 25. The ALJ reasonably used plaintiff's activities of daily living to illustrate a contradiction in plaintiff's testimony. *See Orn*, 495 F.3d at 639. Although plaintiff argues for a different reading of the record, because the ALJ's findings are supported, they must be upheld. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004) (holding that if evidence exists to support more than one rational interpretation, the court is bound to uphold the ALJ's findings).

Moreover, plaintiff ignores other inconsistencies identified by the ALJ. For example, the ALJ noted that "[a]lthough diagnosed with a left shoulder condition and obesity, imaging reports showed only mild findings and examination results were unremarkable." Tr. 21. An ALJ may reject a claimant's allegations that "do not comport

---

[2] Plaintiff testified that she earned $12,745 in 2010 and $12,237 in 2009 "watching my grandbaby" full time. Tr. 47. She also testified that she worked as a television extra. Tr. 48.

8 – OPINION AND ORDER

with objective evidence in [the] medical record." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009). Additionally, the ALJ found that "[t]he medical evidence record shows only routine and conservative treatment, and surgery was not recommended or undertaken." Tr. 21. Conservative treatment can be "sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra*, 481 F.3d at 750-51 (citation omitted). The record supports these findings, and plaintiff does not challenge them.

In sum, although the ALJ erred in considering plaintiff's work history, he otherwise provided alternative specific, clear and convincing reasons, supported by substantial evidence, to reject plaintiff's subjective symptom testimony. *See Carmickle v. Commissioner*, 533 F.3d 1155, 1163 (9th Cir. 2008) (holding when the ALJ provides valid reasons supported by substantial evidence, despite also relying on invalid reasons, the ALJ "had a proper basis" to make a negative credibility determination).

## II. Medical Opinion Evidence

### A. Nicole Prophet, QMHP

Plaintiff argues that the ALJ failed to properly evaluate Prophet's opinions regarding functional limitations. Pl. Br. 6-12.

As a counselor, Prophet is a medical source, but is not considered an "acceptable medical source" under the Act; accordingly, the applicable legal standard is the equivalent of a lay witness, or "other source." *Dale v. Colvin*, 823 F.3d 941, 943 (9th Cir. 2016); SSR 06-03p, *available at* 2006 WL 2329939. Lay witness testimony regarding the severity of a claimant's symptoms or how an impairment affects a claimant's ability to work is competent evidence that an ALJ must take into account. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). To reject such testimony, an ALJ must provide "reasons germane to each witness." *Lewis v. Apfel*,

236 F.3d 503, 511 (9th Cir. 2001) (citations omitted). "Further, the reasons 'germane to each witness' must be specific." *Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009) (citing *Stout v. Comm'r Social Sec. Admin*, 454 F.3d 1050, 1053 (9th Cir. 2006)).

On December 27, 2017,[3] Prophet submitted a form titled "About What the Claimant Can Still Do Despite Mental Impairments." Tr. 1105-09. Prophet wrote that she "had been seeing plaintiff at least twice a month since August 2016," and listed plaintiff's diagnoses as "major depressive disorder" and "moderate and general anxiety disorder." Tr. 1105. Prophet indicated that plaintiff's mental signs and symptoms include sleep disturbance, mood disturbance, anhedonia or pervasive loss of interests, psychomotor agitation or retardation, social withdrawal or isolation, decreased energy, general persistent anxiety, and somatization unexplained by organic disturbance. *Id.*

Regarding plaintiff's mental functioning, Prophet indicated that "[plaintiff's] mental impairments cause [her] to need to be present at clinics and other treatment facilities for scheduled appointment at assigned times, as reflected in the treatment records"; "[her] mental disorders cause [her] to need to disengage from productive activity for unscheduled breaks beyond the standard morning, lunch and afternoon work breaks"; and "the effects of [plaintiff's] mental impairments [have] become intertwined with how [she] experiences physical symptoms and limitations, exacerbating [plaintiff's] experience of pain or other physical symptoms and functional limitations." Tr. 1106-09. Prophet further opined that plaintiff would miss four or more days of work per month from regular full-time work as a result of her mental impairments and treatment. Tr. 1109.

---

[3] It appears Prophet mistakenly dated the form December 27, 2018. Tr. 1109.

10 – OPINION AND ORDER

The ALJ gave Prophet's assessment "little weight."  Tr. 25.  First, the ALJ rejected Prophet's opinions on the basis that "it is primarily the claimant's household/family issues that keep her from working rather than her actual anxiety."  Tr. 25.  Plaintiff contends this is error because the ALJ did not identify any statements made by medical providers that support this finding.  Pl. Reply Br. 1 (citing *Tackett*, 180 F.3d at 1102-03).  Essentially, plaintiff argues the ALJ substituted his lay opinion for that of a physician, which is prohibited.  *See, e.g.*, *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975) (holding ALJ who went "outside the record to medical textbooks for the purpose of making his own exploration and assessment as to claimant's physical condition" erred).

However, the ALJ did not make any medical findings on his own.  Rather, the ALJ cited the record evidence and made the determination that plaintiff's family circumstances factored more heavily in plaintiff's lack of employment than her alleged disability.  The record contains ample evidence from both medical and non-medical sources that plaintiff's family and household are on-going sources of stress for plaintiff.  *See, e.g.*, Tr. 55, 397, 417, 450, 451, 453, 457, 473, 474, 477, 486, 504, 510, 516, 518, 550, 580, 588, 606, 657, 681, 909, 917, 938, 1106.  In fact, the ALJ's determination was directly demonstrated at one particular clinical visit where "[c]lient arrived for appointment stating she was extremely overwhelmed.  'I have so much family stuff going on right now!'  'I don't know if I'm ready to find work.'  'I don't want to start something, then always have to leave my job!'"  Tr. 968.  In sum, the ALJ made a reasonable and supported decision based on the record.  Accordingly, the ALJ's finding that household/family matters precluded plaintiff from working rather than an impairment is a germane reason to discount Prophet's opinion.

Second, the ALJ rejected Prophet's opinion on the basis that "[plaintiff] is very active,

11 – OPINION AND ORDER

and her robust activities at home parenting four children, attending her children's sports events and attending group therapy demonstrate an ability to work." Tr. 25. As discussed above, the ALJ properly discounted plaintiff's subjective symptom testimony based on her activities of daily living. The ALJ reasonably applied that same reasoning to Prophet's assessments. *See, e.g., Valentine v. Comm'r Soc. Sec. Admin*, 574 F.3d 685, 694 (9th Cir. 2009) (holding when an ALJ has given clear and convincing reasons for discounting a plaintiff's subjective symptom testimony and rejects similar lay witness testimony, "it follows that the ALJ also gave germane reasons for rejecting her testimony"); *see also Carmickle*, 533 F.3d at 1163-64 (holding inconsistency between claimant's activities and lay witness's statements is germane reason for discrediting a lay witness).

Third, the ALJ discounted Prophet's opinions because "the overall medical evidence record, including an absence of psychiatric hospitalizations, mostly unremarkable mental status examination results and improved symptomatology with treatment do not square with Ms. Prophet's assessment that the claimant has serious difficulties interacting with others and adapting." Tr. 25. An ALJ may discount lay testimony if it conflicts with the objective medical evidence. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). Here, the medical evidence indicates that plaintiff's mental health status was consistently assessed as "unremarkable." Tr. 341, 349, 669-70, 672-73, 678-79, 681-82, 914. The medical evidence also indicates improvements in plaintiff's mental health. Tr. 887, 1254. Accordingly, the ALJ provided a germane reason and did not err by discrediting Prophet's opinion on this basis.

In sum, the ALJ articulated three germane reasons for rejecting QMHP Prophet's opinion that were supported by substantial evidence and, accordingly, did not err when he discounted her

"other source" opinion. *See Valentine,* 574 F.3d at 694 (suggesting only one germane reason is sufficient).

> B.  Dr. Patricia Gardener

Plaintiff argues that the ALJ improperly rejected the opinion of treating physician Dr. Gardner. Pl. Br. 13-14.

The ALJ is responsible for resolving ambiguities and conflicts in the medical testimony. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ must provide clear and convincing reasons for rejecting the uncontradicted medical opinion of a treating or examining physician, or specific and legitimate reasons for rejecting contradicted opinions, so long as they are supported by substantial evidence. *Bayliss*, 427 F.3d at 1216. However, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012). Additionally, the ALJ may discount physicians' opinions based on internal inconsistencies, inconsistencies between their opinions and other evidence in the record, or other factors the ALJ deems material to resolving ambiguities. *Morgan*, 169 F.3d at 601-02.

In his decision, the ALJ stated that "Nicole Prophet under the supervision of P. Gardner, MD, provided a medical source opinion." Tr. 25. Plaintiff contends because Dr. Gardner co-signed the assessment form filled out by Prophet, analyzed above, Dr. Gardner adopted that form as her own, and, as a result, the ALJ erred because he did not provide specific and legitimate reasons for rejecting those opinions.[4] Pl. Br. 4 (citing *Garrison*, 759 F.3d at 1012).

---

[4] In support, plaintiff cites *Oates v. Colvin*, Case No. 3:13-cv-01868-SI, 2015 WL 1637649, at *4 n.2 (D. Or. April 13, 2015), but that case is inapposite because unlike here, the "government [did] not argue that [the opinion co-signed by a physician] should not be

13 – OPINION AND ORDER

The Ninth Circuit has held that the opinion of an other source may be "considered as part" of the opinion of an acceptable medical source if the other source worked "closely under the supervision of" and was "acting as an agent" of the acceptable medical source. *Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir. 1996) (holding that the opinion of an nurse practitioner was properly ascribed to the supervising physician and treated as an opinion from an "acceptable medical source")[5]; *see also Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234 (9th Cir. 2011) ("To the extent nurse practitioner Wrona–Sexton was working closely with, and under the supervision of, Dr. Thompson, her opinion is to be considered that of an 'acceptable medical source.'"). However, nothing in Ninth Circuit case law or the regulations directs that the opinion of an other source becomes the opinion of an acceptable medical source simply because it was co-signed by the acceptable medical source.

---

treated as an unacceptable medical source." Pl. Reply Br. 3; Def. Br. 7 ("Dr. Gardner did not provide an independent medical opinion[.]").

[5] In so holding, the Ninth Circuit relied in part on 20 C.F.R. § 416.913(a)(6), which provides that "[a] report of an interdisciplinary team that contains the evaluation and signature of an acceptable medical source is also considered acceptable medical evidence." *Gomez*, 74 F.3d at 971.
    A few years after the Ninth Circuit issued the *Gomez* decision, "the Social Security Administration repealed 20 C.F.R. § 416.913(a)(6), stating that 'it is redundant and somewhat misleading to provide that an interdisciplinary team report containing the evaluation and signature of an acceptable source is such a source.'" *Jill C. v. Berryhill*, No. 3:17-cv-01892-SI, 2018 WL 6308728, at *8 (D. Or. Dec. 3, 2018) (citation omitted). Although § 416.913(a)(6) has been repealed, the Ninth Circuit has observed that the *Gomez* decision only "relied in part on language" from this regulation. *Molina v. Astrue*, 674 F.3d 1104, 1111 n.3 (9th Cir. 2012). Furthermore, although the Ninth Circuit has declined to address the validity of *Gomez* in light of the repeal of § 416.913(a)(6), *see, e.g.*, *Britton v. Colvin*, 787 F.3d at 1011, 1013 n.4 (9th Cir. 2015) ("*Gomez* partially relied on 20 C.F.R. § 416.913(a)(6), which has been repealed. . . . We express no view on the validity of *Gomez*."), the Ninth Circuit has "continued to cite *Gomez* and apply the exception to the 'acceptable medical sources' definition long after the repeal of § 416.913(a)(6)." *Jill C.*, 2018 WL 6308728, at *8 (citing *Taylor*, 659 F.3d at 1234). Therefore, courts have held that "*Gomez* continues to set forth the law of the Ninth Circuit." *Id.* (citation and quotation marks omitted).

14 – OPINION AND ORDER

Even assuming that Prophet's assessment could be converted into Dr. Gardner's opinion by her co-signature, the ALJ's germane reasons were nevertheless specific and legitimate. *See Carmickle*, 533 F.3d at 1164 (when treating physician's opinion is contradicted by other evidence in record, ALJ must provide "specific and legitimate reasons" for discounting it). The ALJ's reasoned: it was plaintiff's family/household obligations that prevented her from working rather than her impairment, *see Long v. Comm'r, Soc. Sec. Admin.*, No. CIV. 09-1022-KI, 2011 WL 589121, at *7 (D. Or. Feb. 9, 2011) ("situational stressors" as a cause rather than the "underlying mental condition" is a "specific and legitimate reason" to discount a physician's opinion); the limitations indicated in the assessment conflicted with plaintiff's ability to participate in daily activities, *see Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (inconsistency with claimant's activities is valid reason to discount a medical opinion); and those limitations were inconsistent with the record as a whole, *see Tommasetti*, 533 F.3d at 1041 (incongruity between doctor's opinion and her medical records is valid reason to discount doctor's opinion). These reasons are supported by substantial evidence because, as analyzed in the section above, the ALJ pointed to concrete examples from the medical record to support each reason. *See Thomas*, 278 F.3d at 957 (holding ALJ can "meet [the substantial evidence] burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings") (citation omitted). Because the ALJ gave specific and legitimate reasons supported by substantial evidence to not fully credit the assessment co-signed by Dr. Gardner, even assuming this assessment should be considered as one by a treating physician, the ALJ did not err. *See Lewis v. Apfel*, 236 F.3d 503, 513 (9th Cir. 2001) (ALJ must discuss and evaluate the evidence that supports findings but need not do so under a particular heading).

15 – OPINION AND ORDER

### III. Erroneous RFC

Plaintiff argues the ALJ's RFC formulation is not supported by substantial evidence. Pl. Br. 17-22.

The RFC is the most a person can do, despite the person's physical or mental impairments. 20 C.F.R. §§ 404.1545, 416.945. In formulating an RFC, the ALJ must consider all medically determinable impairments, including those that are not "severe," and evaluate "all of the relevant medical and other evidence," including the claimant's testimony. *Id.*; SSR 96-8p, *available at* 1996 WL 374184. In determining a claimant's RFC, the ALJ is responsible for resolving conflicts in the medical testimony and translating the claimant's impairments into concrete functional limitations in the RFC. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). Only limitations supported by substantial evidence must be incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the vocational expert. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001). An ALJ is only required to identify specific, credible limitations in the RFC—"[p]reparing a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record is unnecessary." *Bayliss*, 427 F.3d at 1217.

#### A. Left Shoulder Limitations

Plaintiff first asserts that the ALJ erred by not including in the RFC additional limitations resulting from her left shoulder condition. Pl. Br. 18.

The ALJ found plaintiff's left shoulder impairment severe, limiting plaintiff to frequent overhead reaching with the left upper extremity. Tr. 17, 21. Plaintiff contends the ALJ's overhead reaching limitation conflicts with his finding that plaintiff "is able to lift

16 – OPINION AND ORDER

and carry up to 50 pounds on an occasional basis throughout a workday with her left arm."
Pl. Br. 18.  In arguing that the ALJ should have included a lift/carry limitation in the RFC,
plaintiff points to her physicians' treatment notes pertaining to her shoulder pain.  Pl. Br.
18-19 (citing Tr. 274, 577, 642, 787, 788, 789, 876, 887, 1012, 1069, 1067, 1068, 1070).

But the ALJ considered plaintiff's shoulder impairment at length and determined it
had no more than a minimal effect on her ability to perform work at step two.  Tr. 21-22, 25,
26.  Indeed, while plaintiff regularly reported shoulder pain to providers, none described
functional limitations beyond those set forth in the RFC.  *See, e.g.*, Tr. 749, 774, 778, 780,
787, 876, 886, 889, 890, 1027, 1068.  In fact, the only lifting/carrying limitation of record
was provided by Dr. Williams, who indicated plaintiff had "no limitations" on "[m]aximum
lift/carry/push/pull capacity."  Tr. 892.

Further, as discussed above, the ALJ validly discredited plaintiff's allegations
regarding the severity and limiting effects of her shoulder pain based on her activities of
daily living.  The ALJ is the proper arbiter of conflicts and inconsistencies in the overall
record.  *Tommasetti*, 533 F.3d at 1041.  Although plaintiff provides an alternative
interpretation of the evidence, the ALJ's decision not to include additional lifting and
carrying limitations to the RFC was supported by substantial evidence, and therefore must
be upheld.  *Bayliss*, 427 F.3d at 1217.

### B.    Step-Two Determination of Plaintiff's Low Back Pain

Plaintiff also argues the ALJ erred in finding her low back pain was not severe and,
as such, failed to consider it in making the disability determination.  Pl. Br. 22.

The step two inquiry is a *de minimis* screening device used to dispose of groundless
claims.  *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987).  The claimant bears the burden of

17 – OPINION AND ORDER

establishing that she has a severe impairment at step two by providing objective medical evidence. 20 C.F.R. §§ 404.1512(a), 416.912(a). An impairment is "not severe" if it does not "significantly limit" a claimant's ability to conduct basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c); *see also Sullivan v. Zebley*, 493 U.S. 521, 525 (1990).

With regards to plaintiff's back pain, the ALJ noted:

After complaints of chronic low back pain in February 2012, imaging revealed satisfactory alignment of all lumbar elements without acute osseous change or bone destruction (Ex. C11F/64). Two months later, the claimant had physical therapy for lower back pain (Ex. C1F/2).

In November 2014, the claimant presented to the emergency department with worsening neck pain without weakness, numbness or loss of bowel or urine (Ex. C2F/1). After examination, the claimant was diagnosed with a cervical strain, neck pain, torticollis and not cervical radiculopathy with no cervical fracture (Ex. C2F/2). X-rays of the claimant's cervical spine showed minimal reversal of the cervical lordosis of undetermined clinical significance but an otherwise negative study (Ex. C3F/10)[.]

\*    \*    \*

In March 2016, the claimant reported left-sided low back pain with sciatica, and the claimant was prescribed capsaicin topical cream. The claimant was also prescribed cyclobenzaprine and referred to physical therapy. Examination revealed a normal gait and posture, tenderness without spasm and decreased range of motion (Ex. C7F/64). The claimant had no sensory or strength deficits (Ex. C7F/65)[.]

\*    \*    \*

N. Williams, MD, conducted a consultative medical examination with the claimant in August 2016 (Ex. C8F/2). The claimant had a normal gait (Ex. C8F/5), and Dr. Williams described the claimant as having an entirely normal physical examination with only some lumbar spine tenderness (Ex. C8F/6).

\*    \*    \*

In January 2017, examination results revealed a normal gait and posture with no spinal deformity, some lower back muscular tenderness but no decreased range of motion or spasm.

Tr. 17-18. The medical record supports the ALJ's observations and findings that plaintiff's low back pain "caused only transient and mild symptoms and limitations, are well controlled with treatment, did not persist for twelve continuous months, do not have greater than a minimal limitation on the claimant's physical or mental ability to perform basic work activities, or are otherwise not adequately supported by the medical evidence of record." Tr. 18. Treatment notes, for example, consistently state that "[e]xamination of the spine reveals normal gait and posture, no spinal deformity, symmetry of spinal muscles, lower back muscular tenderness without spasm, no bony tenderness, decreased range of motion." *See, e.g.*, Tr. 812, 814, 1029, 1039, 1044, 1045, 1047, 1053. Treatment notes also confirm plaintiff's treatment with physical therapy, topical cream, muscle relaxants, ibuprofen, heat, and ice. *See, e.g.*, Tr. 746, 782, 811, 812, 887, 1039, 1044. Thus, the ALJ's determination is supported by substantial evidence and, accordingly, he did not err when he found plaintiff's low back pain to be non-severe.

In the alternative, plaintiff argues "the ALJ found that [her] low back pain was a medically determinable impairment" and therefore erred when he "specifically stated that he considered only [her] shoulder pain and obesity when determining" her RFC. Pl. Br. 22 (citing Tr. 17). It is true, as noted above, that an ALJ must consider the effect of all impairments, both severe and non-severe, in assessing an RFC. *See* 20 CFR § 404.1523. Here, however, the ALJ specifically discussed plaintiff's low back pain, and while he found it was not a severe medically determinable impairment, the ALJ stated it was "considered in conjunction with [plaintiff's] severe impairments . . . , including in the assessment of [her] residual functional capacity." Tr. 18.

In sum, the ALJ's RFC determination is supported by substantial evidence.

19 – OPINION AND ORDER

**ORDER**

For the reasons discussed above, the Commissioner's decision is AFFIRMED.

DATED September 28, 2020.

/s/ Youlee Yim You
Youlee Yim You
United States Magistrate Judge